UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| AMY PORTER, INDIVIDUALLY, AND KEVIN LANGLEY, INDIVIDUALLY, AND ON BEHALF OF THEIR FATHER, GARY LANGLEY | * * * * * * | CIVIL ACTION NO. 2:12-CV-1986 |
| VERSUS | * * | JUDGE PATRICIA MINALDI |
| DEERE & COMPANY, INC., JOHN DEERE CONSTRUCTION & FORESTRY COMPANY, MIKE MARTIN, QUALITY EQUIPMENT COMPANY, INC., AND F. HOLLIER & SONS, INC. | * * * * * * | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the court is the Motion to Remand by Amy Porter and Kevin Langley, acting individually and on behalf of their deceased father, Gary Langley (hereinafter "plaintiffs"). Doc. 4. For the reasons discussed herein, the motion is DENIED.

### *Background*

Plaintiffs filed suit in the in 33rd Judicial District in Allen Parish, Louisiana on August 25, 2011. They seek damages for an incident wherein Gary Langley was killed after he was repeatedly run over by his tractor. The petition for damages names five defendants including Deere & Company, Inc., John Deere Construction & Forestry Company, Mike Martin, Quality Equipment Company, Inc. (hereinafter "Quality"), and F. Hollier & Sons, Inc. (hereinafter "Hollier"). Doc. 4, Att. 1. Plaintiffs have since settled their claims against defendants Quality and Hollier. Doc. 1, p. 5.

The petition alleges that defendants Deere & Company, Inc,. and John Deere Construction & Forestry Company (hereinafter "Deere defendants") are liable pursuant to the Louisiana Products Liability Act ("LPLA") for manufacturing a product that was unreasonably dangerous in design and in failing to provide adequate warnings concerning the risks associated with the tractor. Plaintiffs theorize that the tractor in question unexpectedly shifted into gear from park because it lacked a properly-designed transmission, electrical system, and safety system to prevent such an unexpected shifting from occurring. Doc. 4, Att. 1, pp. 9, 10.

Plaintiffs allege that defendant Mike Martin performed repair work on the decedent's tractor prior to the incident in question. The petition for damages submits that Mr. Martin was negligent in repairing the tractor and in failing to warn the decedent of a defective transmission, electrical system, and safety system. Doc. 4, Att. 1, p. 12.

The Deere defendants removed the case to this court on July 24, 2012.[1] Doc. 1. They assert this court has subject matter jurisdiction on the basis of diversity. Plaintiffs are domiciled in Louisiana. The Deere defendants are both incorporated in Delaware and maintain their principal place of business in Illinois. Defendant Mike Martin is domiciled in Louisiana. Doc. 1, p. 3. However, the Deere defendants maintain that the citizenship of Mr. Martin should not factor into the jurisdictional calculus because he was improperly joined as a defendant in the case. The Deere defendants argue that plaintiffs lack a cause of action against Mr. Martin

---

[1] Clearly removal was more than thirty days following defendants' being served with the original petition as require by 28 U.S.C. § 1446. Defendants claim in the Notice of Removal that their action was timely as receipt of the transcript of the non-diverse defendant triggered the delay period found in subparagraph (b)(3) of the cited statute which allows a notice may be filed 30 days after receipt of any "other paper from which it may first ascertained that the case is . . . removable." 28 U.S.C. § 1446(b)(3). The Fifth Circuit has held that "a transcript of [a defendant's] deposition testimony is 'other paper.'" *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). Plaintiff does not challenge the timeliness of the filing. Accordingly we accept defendants' allegations set forth in their notice and find this removal timely.

because he did not repair the transmission or perform any work on the electrical or safety systems.  Doc. 1, pp. 5-6.

Plaintiffs filed a Motion to Remand on August 13, 2012.  They assert that removal was improper as Mike Martin was a properly joined non-diverse defendant.  Doc. 4.

## *Law and Analysis*

This case, as currently composed, does not involve completely diverse parties as plaintiffs and defendant Mike Martin share a common domicile.  Thus, the critical question for the court is whether the citizenship of the sole non-diverse defendant Mr. Martin should factor into the jurisdictional calculus.  The undersigned concludes that it should not.

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court.  28 U.S.C. § 1441(a).  District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  28 U.S.C. § 1332(a)(1).  The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity among the parties.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Federal courts have jurisdiction even when the parties are not completely diverse if the non-diverse defendant has been improperly joined.  *See* 28 U.S.C. § 1441(b)(2); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004).  In such cases, the removing party must show, *inter alia*, either: (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999).  Only the latter category is relevant in this case.

The proper test under this second category is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. Factual allegations are to be viewed in the light most favorable to the plaintiff; however, "conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to defeat a properly supported claim of fraudulent joinder." *Fry v. Am. Gen. Fin., Inc.*, 307 F.Supp. 2d 836, 844 n.6 (S.D. Miss. 2004) (citing *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 392-39 (5th Cir. 2000)). Plaintiffs must show more than a mere theoretical possibility of recovery. *See Irby*, 326 F.3d at 648 (citations omitted).

In conducting this analysis, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 263 (5th Cir. 1995). However, the standard applied in evaluation is "closer to the Rule 12(b)(6) standard," *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 333-34 (5th Cir. 2004), where plaintiffs are prohibited from "rest[ing] upon the mere allegations or denial of [their] pleadings." *Beck v. Tex. State Bd. of Dental Exam'rs,* 204 F.3d 629, 633 (5th Cir. 2000).

The petition for damages avers that Mike Martin is liable to the plaintiffs, and states, "GARY LANGLEY brought his tractor to MIKE MARTIN'S mechanic shop for service and repairs. MIKE MARTIN made improper repairs and failed to warn GARY LANGLEY of the defective transmission, electrical and safety system on the 2040 John Deere tractor." Doc. 4, Att. 1, p. 12. The petition also alleges that Mike Martin was negligent in the following respects:

1) In failing to adequately repair the tractor,

    2) In failing to warn and/or instruct the customer of the dangers which would be associated with reasonably anticipated uses of the tractor after the repairs were made, and

    3) In failing to properly test the tractor after making repairs to the tractor.

Doc. 4, Att. 1, p. 12.

The Deere defendants attack each of these theories of negligence in the Notice of Removal. Mr. Martin testified in a deposition that he made repairs to the decedent's tractor; however, he only made two minor repairs—fixing a fuel leak and a hydraulic leak. Doc. 1, p. 5. Mr. Martin did not work on the transmission, electrical, or safety systems of the tractor. Doc. 1, p. 6. Thus, the Deere defendants argue that the plaintiffs do not have a possibility from recovering from Mr. Martin.

Plaintiffs focus the entirety of their brief in support of the Motion to Remand arguing the merits of their second theory of negligence. They maintain that Mr. Martin had a duty to warn and instruct the decedent as to various risks associated with the tractor. Plaintiffs seemingly concede that they do not enjoy a cause of action with respect to the first and third theories pled in the petition for damages.[2]

The petition's second theory of negligence borrows much of its language from LPLA terminology. The LPLA provides that a product's "manufacturer" is liable for damage proximately caused by an "unreasonably dangerous characteristic" of the product when the damage occurred during a "reasonably anticipated use" of the product. La. Rev. Stat. § 9:2800.54(A). Moreover, the LPLA provides that the failure to provide an "adequate warning" about the product is one of the ways in which a product may be "unreasonably dangerous." La. Rev. Stat. § 9:2800.54(B)(3).

---

[2] Plaintiffs fail to discuss the first and third theories of liability in their Motion to Remand. Consequently, the court does not address the merits of these theories.

The petition submits that Mr. Martin failed to "warn" the decedent about dangers associated with "reasonably anticipated uses" of the tractor. The LPLA imposes this duty on product "manufacturers," and Mr. Martin plainly does not qualify as a manufacturer of the tractor involved in the decedent's accident. La. Rev. Stat. § 9:2800.53(1). The petition inappropriately attempts to impose the duty of a manufacturer of a product onto a mechanic who repairs that product. The manufacturer of a product necessarily owes a higher standard of care than does a repairman. *See Hunt*, 341 So.2d at 619 (discussing the different duties owed by manufacturers, sellers, and repairmen).

Plaintiffs' argument in brief focuses primarily on Mr. Martin's broader duty as a mechanic to advise customers and their memorandum couches this duty in the following terms:

> Mike Martin, as a John Deere trained mechanic who elected to offer his mechanic services to Mr. Langley to repair the tractor, undertook a duty to the owner to repair the vehicle, return it in a safe condition, and warn of any dangers. A jury could reasonably conclude that a mechanic owes such a duty, because the entire purpose of bringing a vehicle to a mechanic is to repair it and learn of any unsafe conditions before operating it. Furthermore, by stating that he would have actually warned Mr. Langley of the missing safety cover, Mike Martin voluntarily assumed a duty to warn Mr. Langley of the danger. One who voluntarily assumes a duty must perform that duty with due care. A jury . . . could reasonably conclude that Mike Martin, by failing to check for the safety device, failed to perform his duty with due care.

Doc. 4, Att. 1, p. 5.

Certainly Mr. Martin owed a duty to the decedent. *See e.g. Hunt v. Ford Motor Co.*, 341 So.2d 614, 619 (La. App. 2 Cir. 1977). However plaintiffs have failed to refute the deposition testimony by Mr. Martin that he worked on the tractor in only two limited asspects. He fixed a pinhole leak in the fuel tank and he repaired an o-ring seal in a hydraulic hose. The extent of Mr. Martin's duty to repair the tractor, return it in a safe condition and warn of any dangers associated with the repairs, was limited only to those areas of the tractor on which he actually

worked—the fuel tank and the hydraulic hose.  While a repairman owes a duty to those whom he offers his services, that duty is not limitless.  *See Block v. Fitts*, 274 So.2d 811, 814 (La. App. 3 Cir. 1973) (repairman liable only "if the accident which occurred is the type [of] accident which the repairman reasonably should have anticipated might result from his negligence").  This case would be completely different had the accident involved the fuel or hydraulic systems of the tractor.

Plaintiffs also assert that Mr. Martin voluntarily undertook a duty to warn Mr. Langley of the certain dangers.  This position is similarly without merit.  Plaintiffs fail to articulate the dimensions of this duty in the context of a mechanic, and they misrepresent the substance of Mr. Martin's deposition testimony with respect to this issue.

Plaintiffs direct this court to *Harris v. Pizza Hut of La, Inc.*, 455 So.2d 1364 (La. 1984), wherein the Supreme Court of Louisiana recognized that a defendant may voluntarily undertake a duty in certain circumstances.  The *Harris* court imposed liability on a business for the negligent acts of its private security guard because the business voluntarily undertook the duty of protecting its customers by hiring the guard.  *Id.* at 1369.  Plaintiffs fail to cite any case that has extended the rationale of *Harris* extends to the repairs of a mechanic, and they have not attempted to draw any parallels with this case.

Plaintiffs anticipate that the Deere defendants will argue that the decedent improperly jumpstarted the tractor by essentially hotwiring it while in gear.  They submit that Mr. Martin testified during his deposition that he knew that users were starting tractors in this manner, knew it was dangerous, and knew that John Deere sold a cover that offered protection from this risk.  Plaintiffs misrepresent the substance of Mr. Martin's deposition testimony.

While Mr. Martin testified that he understood the risks involved in jumpstarting a tractor and would have told the decedent to get a safety cover, he also testified that he did not service (much less observe) the transmission, electrical system, or safety system. Mr. Martin may have understood the various risks associated with the tractor; however, that knowledge does not mean that Mr. Martin voluntarily assumed financial responsibility for anything and everything that could potentially go wrong with the tractor.

*Conclusion*

For the reasons discussed herein, the undersigned concludes that there is "no reasonable basis . . . to predict that the plaintiff[s] might be able to recover against" Mike Martin, the lone non-diverse defendant in this suit. *Smallwood*, 385 F.3d at 573. Accordingly, the Motion to Remand is DENIED. A separate Report and Recommendation will be issued recommending defendant Mike Martin be dismissed from the case.

THUS DONE this 11th day of January, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE